UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| HECTOR MIGUEL GONZALEZ-AHUMADA and ERNESTO ALONSO GODINEZ-ABREGO, on behalf of themselves and all other similarly situated persons, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CLASS ACTION |
| v. | ) ) | Complaint |
| JONES SWEET POTATO EQUIPMENT, INC., JIMMY D. JONES, JR., and BARBARA D. JONES, | ) ) ) ) | Civil Action No.: |
| Defendants. | ) ) ) | |

## I.  PRELIMINARY STATEMENT

1.      Plaintiffs Hector Miguel Gonzalez-Ahumada ("HMGA") and Ernesto Alonso Godinez-Abrego ("EAGA") are migrant farmworkers who were jointly employed by Jones Sweet Potato Equipment, Inc. ("JSPE") and its principals Jimmy D. Jones, Jr., President of JSPE), and Barbara D. Jones, Vice-President of JSPE), through the H-2A program to perform various agricultural duties related to the sweet potato growing and harvesting operation of the Jones defendants in or around Bailey, North Carolina as part of a crew of temporary agricultural workers jointly employed by the Jones defendants pursuant to the terms of H-2A Job Contract and H-2A visas from in or about April through November in 2017 (HMGA) and again in 2018 (both HMGA and EAGA).

2.      In 2017 and again in 2018, the Jones defendants furnished and caused one or more vehicle(s) to be used to provide transportation for the named plaintiffs and those same crews of migrant farmworkers for off-contract agricultural employment by agricultural employers in North

1

Carolina other than the Jones defendants that was not authorized pursuant to an H-2A visa issued to the plaintiffs and the members of that same H-2A crew. When the Jones defendants engaged in those actions, they did not ensure that the vehicle(s) conformed to the required federal and state standards, that the driver(s) of those vehicle(s) had a valid and appropriate license as provided by North Carolina law to operate those vehicle(s), and that there was an insurance policy or liability bond in effect that insured the Jones defendants against liability for damage to persons or property in connection with the transportation of those workers.

3.     Both named plaintiffs file this action as a collective action under 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA"), and as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to their statutory claims under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 et seq., and the North Carolina Wage and Hour Act ("NCHWA"), N.C.Gen.Stat. §§ 95-25.1 set seq.

4.     The Jones defendants violated the Fair Labor Standards Act and N.C.Gen.Stat. § 95-25.6 by failing to pay each Plaintiff free and clear at least the required minimum hourly wage for every compensable hour of labor performed in the first and last workweeks and in each workweek that the Defendants jointly employed the Plaintiffs in North Carolina in 2017 and 2018 by making a *de facto* wage deduction in the form of a payments by the Plaintiffs and the H-2A employees that they seek to represent as a condition of their employment under the H-2A program in North Carolina in 2017 for the costs of their inbound and return transportation and subsistence to and from Bailey, North Carolina from and to the place from which the plaintiffs and the H-2A workers they seek to represent departed to work for and to which they returned to after finishing their work for the Jones defendants in 2017 and 2018, by failing to pay all wages when due at the minimum hourly adverse effect wage rate ("AEWR") promulgated by the U.S. Department of Labor ("DOL")

pursuant to 20 C.F.R. §§ 655.122(l) and 655.120 (2010) and as set forth in 29 U.S.C. § 206(a) for the hand harvest of sweet potatoes on a piece rate basis for the defendants in 2017, and by failing to pay plaintiff HMGA for all hours worked when the Jones defendants jointly employed him to drive other workers to and from the locations at which those workers performed work for either the Jones defendants or off-contract work for agricultural employers other than the Jones defendants and to and from the places at which those workers engaged in the commercial activities necessary to feed and clothe themselves during their joint employment by the Jones defendants.

5.      The named Plaintiffs seek unpaid wages and liquidated damages under 29 U.S.C. §§ 206(a) and 216(b) and N.C.Gen.Stat. §§ 95-25.6, 95-25.22(a), and 95-25.22(a1), and statutory damages pursuant to 29 U.S.C. § 1854(c)(1) on a collective and class basis pursuant to 29 U.S.C. § 216(b) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.  They also seek declaratory relief pursuant to 28 U.S.C. §§ 2201-2202.  Plaintiff HMGA also seeks compensatory damages, treble damages, reinstatement and an injunction to enjoin continued violation of the Retaliatory Employment Discrimination Act ("REDA"), N.C.Gen.Stat. §§ 95-240 et seq., based upon the defendants' discriminatory and retaliatory refusal to re-hire him in 2019 to an H-2A job order employment contract because plaintiff HMGA in good faith provided information to the defendants about the defendants' violation of their statutory obligation to pay all promised wages when due under N.C.Gen.Stat. § 95-25.6 for all hours worked when the plaintiff HMGA did not earn the adverse effect wage rate for harvesting sweet potatoes on a piece rate basis, and for all hours worked while driving and transporting co-workers to/from their various worksites.

## II.    **JURISDICTION**

6.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 (federal question), 1337 (interstate commerce), 1367(a) (supplemental jurisdiction), 216(b)(FLSA), and

1854(a)(AWPA). This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. The claims of the plaintiffs and the class they seek to represent under the NCWHA and the individual claim of plaintiff HMGA under the REDA are all part of the same case or controversy as the Plaintiffs' AWPA and FLSA claims as they derive from a common nucleus of operative fact and are such that the Plaintiffs would ordinarily be expected to try them all in one judicial proceeding, as all claims turn on the nature and existence of the H-2A or non-H-2A employment relationship of the plaintiffs and the class and collective group of workers they seek to represent with the Jones defendants, and the wages owed by the Jones defendants to the plaintiffs and the workers they seek to represent for that employment.

## III.   VENUE

7.     Venue over this action lies in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), and 29 U.S.C. §§ 216(b) and 1854(a). At all times relevant to this action, defendant Jones Sweet Potato Equipment, Inc. was and is a corporation organized under the laws of the State of North Carolina that was and is acting at the direction and under the control of the defendant principals Jimmy D. Jones, Jr., President, and Barbara D. Jones, Vice-President. At all times alleged in this Complaint, defendant Jones Sweet Potato Equipment, Inc. (hereinafter referred to as "Jones Farms") and the individual defendants Jimmy D. Jones, Jr. and Barbara D. Jones (collectively the "Jones Defendants" including Jones Farms and the two individual Jones defendants) reside in and were engaged and continue to engage in regular and substantial business activities in Nash County and surrounding counties in North Carolina at the time this action was commenced, and a substantial part of the events that gave rise to this action occurred in Nash County, North Carolina as specified in 28 U.S.C. § 113(a).

## IV.   PARTIES

**Jones Defendants**

8. At all times relevant to this complaint, Jones Sweet Potato Equipment, Inc. (hereinafter "Jones Farms") is and has been a for profit, closely held corporation that is organized under the laws of the state of North Carolina, for the purpose of, among others, growing, producing, harvesting, and marketing of flue-cured tobacco, sweet potatoes and other agricultural products within and without Nash County, North Carolina for interstate commerce. In 2017, again in 2018, and again in 2019, Jones Farms sought and obtained or seeks to obtain H-2A visas from the U.S. Department of Homeland Security for certain Mexican citizens to be employed exclusively by Jones Farms to perform some specifically described temporary or seasonal agricultural employment pursuant to the terms of the H-2A Job Order employment contracts that are copied and attached to this Complaint marked as Plaintiffs' Exhibit A, Plaintiffs' Exhibit B, Plaintiffs' Exhibit C, Plaintiffs' Exhibit D, and Plaintiffs' Exhibit E.

9. At all times relevant to this complaint, Defendant Jimmy D. Jones, Jr. has been and continues to be the President, part-owner, and co-operator of Jones Farms.

10. At all times relevant to this complaint, Defendant Barbara D. Jones has been and continues to be the Vice-President of Jones Farms, part-owner, and co-operator along with the person who upon information and belief is her spouse, defendant Jimmy D. Jones, Jr.

11. The registered agent for service of process on the defendant corporate entity Jones Sweet Potato Equipment, Inc. is defendant Jimmy D. Jones, Jr., 7094 Honeysuckle Lane, Bailey, North Carolina 27807.

**Plaintiffs**

12. At all times relevant to this Complaint, Plaintiffs Hector Miguel Gonzalez-Ahumada (hereinafter referred to as "Gonzalez") and Ernesto Alonso Godinez-Abrego

(hereinafter referred to as "Godinez") were and are citizens of Mexico. During that time, Gonzalez and Godinez permanently resided and continue to reside in colonias located in or near Santiago Ixcuintla in the state of Nayarit in the Republic of Mexico. In 2017 and/or in 2018, they were both jointly employed by all of the Defendants within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4), 29 U.S.C. §§ 203(d) and 203(g), and 20 C.F.R. 655.103(b) and 655.122 during the time that they each performed temporary or seasonal agricultural H-2A employment contract work exclusively for the Defendants pursuant to H-2A visas obtained under the provisions of 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and 1188(a)(1) and pursuant to the terms of and the work described as follows:

(a)     In the H-2A employment contract Job Order No. 10647080 a copy of which is attached marked as Plaintiffs' Exhibit A, Plaintiff Gonzalez contracted to be employed and was employed with an H-2A visa from mid-April 2017 through the end of November 2017 by all of the Defendants in the production of flue-cured tobacco and sweet potatoes for interstate commerce in and around Nash County, North Carolina and/or one or more other counties in North Carolina listed in 28 U.S.C. § 113(a).

(b)     In the H-2A employment contract Job Order No. 10814639 a copy of which is attached marked as Plaintiffs' Exhibit C,  both Plaintiffs Gonzalez and Godinez contracted to be employed and were employed by all of the Defendants with H-2A visas from mid-April or the end of May 2018 through the end of November 2018 in the production of flue-cured tobacco and sweet potatoes for interstate commerce in and around Nash County, North Carolina and/or one or more other counties in North Carolina listed in 28 U.S.C. § 113(a).

13.     In 2017 during the time periods described in paragraph 12(a) above of this Complaint Gonzalez was employed for about 70 workdays as a migrant agricultural worker to perform seasonal or temporary agricultural employment off-contract work for agricultural employers other than Jones Farms when Gonzalez was not authorized to perform that other agricultural employment in the United States under 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1184(c) for those other   agricultural employers.  Those other agricultural employers that did not include Jones Farms included but were not limited to agricultural employers David and Allen Rose of Nashville, North Carolina, Joel Boseman doing business as Battleboro Ag Partnership of Battleboro, North Carolina, Brent Glover of Bailey, North Carolina, and Derek Bissette doing business as Bissette Farms, Inc. in Middlesex, North Carolina.

14.     On each of those about 70 workdays that are described in paragraph 13 above of this Complaint, the Jones Defendants employed Gonzalez for approximately two and one-half hours per day which employment included the following:

(a)     Directing Gonzalez to check the oil, the operating fluids, and to prepare a bus owned by one or more of the Jones Defendants that was designed to transport 16 or more passengers including the driver, and

(b)     Then driving that bus from the labor camp housing provided to Gonzalez by the Jones Defendants to another migrant housing site provided by the Jones Defendants to wait and load up migrant agricultural workers, then to another separate housing unit provided by the Jones Defendants to wait and load up additional migrant agricultural workers, and from there to then drive that bus loaded with approximately 30 migrant agricultural workers to the off-contract worksites described in paragraph 13 above to which the Jones Defendants directed Gonzalez to use or caused to be used to provide transportation for those same workers, and

7

(c)     Then to repeat the same process described in ¶14(b) above in reverse on the way back at the end of the workday as part of a system in which the Jones Defendants directed Gonzalez to use or caused to be used to provide transportation for approximately 30 migrant agricultural workers to and from the labor camp operated by the Jones Defendants to the off-contract worksites described in paragraph 13 above. On each of those about 70 workdays, on arrival at each of those off-contract worksites for the agricultural employers described in ¶13 above, the Jones Defendants directed Gonzalez and those workers with H-2A visas to work exclusively for Jones Farms to perform and they did perform seasonal or temporary agricultural employment off-contract work for the agricultural employers described in ¶13 above when the Plaintiff and those workers were not authorized to perform that other agricultural employment in the United States under 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1184(c) for those other agricultural employers. In addition to those about 70 workdays, in 2017 the Jones Defendants employed Gonzalez one day per week to drive that same bus and to wait to provide transportation services from approximately nine in the morning to four in the afternoon (with approximately one hour of that time interval occupied by Gonzalez's personal activities) for each weekend in 2017 during the time that Gonzalez was in North Carolina to transport the H-2A workers described in ¶8 above of this Complaint to and from town to purchase food and other necessary supplies for their day to day living at the labor camp housing provided by the Jones Defendants pursuant to the terms of the H-2A job order employment contract that the Jones Defendants had with those H-2A workers.

15.     In 2018 during the time periods described in paragraph 12(b) above of this Complaint both Gonzalez and Godinez were employed for about 37 days as migrant agricultural workers to perform seasonal or temporary agricultural employment off-contract work for agricultural employers other than Jones Farms when both Gonzalez and Godinez were not

authorized to perform that other agricultural employment in the United States under 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1184(c) for those other agricultural employers. Those other agricultural employers that did not include Jones Farms included but were not limited to agricultural employers Joel Boseman doing business as Battleboro Ag Partnership of Battleboro, North Carolina, Brent Glover of Bailey, North Carolina, and Derek Bissette doing business as Bissette Farms, Inc. in Middlesex, North Carolina.

16.     On each of those about 37 workdays that are described in paragraph 15 above of this Complaint, the Jones Defendants employed Gonzalez for approximately two and one-half hours per day which employment included the following:

(a)     Directing Gonzalez to check the oil, the operating fluids, and to prepare a bus owned by one or more of the Jones Defendants that was designed to transport 16 or more passengers including the driver, and

(b)     Then driving that bus from the labor camp housing provided to Gonzalez by the Jones Defendants to another migrant housing site provided by the Jones Defendants to wait and load up migrant agricultural workers, then to another separate housing unit provided by the Jones Defendants to wait and load up additional migrant agricultural workers, and from there to then drive that bus loaded with approximately 30 migrant agricultural workers to the off-contract worksites described in paragraph 15 above to which the Jones Defendants directed Gonzalez to use or caused to be used to provide transportation for those same workers, and

(c)     Then to repeat the same process described in ¶16(b) above in reverse on the way back at the end of the workday as part of a system in which the Jones Defendants directed Gonzalez to use or caused to be used to provide transportation for approximately 30 migrant agricultural workers to and from the labor camp operated by the Jones Defendants to the off-

9

contract worksites described in paragraph 15 above. On each of those about 37 workdays, on arrival at each of those off-contract worksites for the agricultural employers described in ¶15 above, the Jones Defendants directed Gonzalez and those workers with H-2A visas to work exclusively for Jones Farms to perform and they did perform seasonal or temporary agricultural employment off-contract work for the agricultural employers described in ¶15 above when the Plaintiff and those workers were not authorized to perform that other agricultural employment in the United States under 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1184(c) for those other agricultural employers. In addition to those about 37 workdays, in 2017 the Jones Defendants employed Gonzalez one day per week to drive that same bus and to wait to provide transportation services from approximately nine in the morning to four in the afternoon (with approximately one hour of that time interval occupied by Gonzalez's personal activities) for each weekend in 2018 during the time that Gonzalez was in North Carolina to transport the H-2A workers described in ¶8 above of this Complaint to and from town to purchase food and other necessary supplies for their day to day living at the labor camp housing provided by the Jones Defendants pursuant to the terms of the H-2A job order employment contract that the Jones Defendants had with those H-2A workers.

17.     In order to obtain the employment that is described in ¶¶12(a)-(b) above and in ¶18 below of this Complaint, the named plaintiffs and all of the workers described or referred to in ¶¶8, 14, 16 above and ¶18 below of this Complaint were recruited by agents of the Defendants in Mexico and transported directly from Mexico to North Carolina by or at the direction of or by arrangements made by one or more authorized agents of the Defendant as a term and condition of their employment by the Defendants.

## V.     STATUTORY AND REGULATORY STRUCTURE OF THE H-2A PROGRAM

18.     The H-2A program was created by 8 U.S.C. §§ 1101(a)(15)(H)(ii)(A) and has been implemented after 2010 pursuant to regulations found at 20 C.F.R. §§ 655.100-655.185.  The H-2A program authorizes the lawful admission of temporary, non-immigrant workers to perform temporary and seasonal agricultural labor.

19.     After 2010, employers requesting H-2A workers are required to file a temporary labor certification application with the relevant U.S. DOL Regional Administrator.  20 C.F.R. §§ 655.100 and 655.101 (2015).  The application must include a job offer that complies with the requirements of 20 C.F.R. §§ 655.122 (2015)  and 653.501(2015) and must include an agreement to abide by the assurances required by § 655.135(2015).  20 C.F.R. § 655.121(a)(3)(2015).  The job offer, commonly referred to as a "clearance order" or "job order", is used to recruit both United States and foreign nationals for H-2A visas.  The terms and conditions in the job order become an employment contract between the employer and employee.  20 C.F.R. § 655.122(q) (2015).

20.     As a condition of receiving temporary labor certification for the importation of H-2A workers, agricultural employers are required to pay the highest of the "adverse effect wage rate", or the federal or state minimum wage.  20 C.F.R. § 655.122(l)(2015).  After 2010 and continuing through the present date, the "adverse effect rate" (known as the "AEWR") was the annual weighted average hourly wage for field and livestock workers in the region as published annually by the U.S. Department of Agriculture based on its quarterly wage survey.  20 C.F.R. §§ 655.103(b)(definition of AEWR) and 655.120(c).

21.     Employers of H-2A agricultural workers are further required to "keep accurate and adequate records" of workers' earnings.  20 C.F.R. § 655.122(j)(1) (2015).

11

22.     In each of the attached job order H-2A contracts in calendar years 2016, 2017, 2018, and 2019, the Jones Defendants or the NCGA on behalf of the Jones Defendants promised that each worker would earn at least the prevailing rate for the crop activity or at least the AEWR, whichever was higher, for every hour or partial hour worked.  Plaintiffs' Exhibits A-F attached at section entitled "Wage Rates, Special Pay Information and Deductions".

23.     In each of the attached job order H-2A contracts in calendar years 2016 through and including 2019, the Jones Defendants or the NCGA acting on behalf of the Jones Defendants promised to "reimburse workers who complete 50 percent of the work contract period and who are not reasonably able to return the same day to their place of residence for the reasonable cost of transportation and subsistence from the place of recruitment to the place of employment" and for workers who complete the work contract period, or if the employee is terminated without cause, and the worker has no immediate H-2A employment, the employer will provide or pay for the worker's reasonable costs of return transportation and subsistence from the place of employment to the place from which the worker, disregarding intervening employment, departed to work for the employer." Plaintiffs' Exhibits A-F attached at sections entitled "17. Transportation" and "Item 19, Transportation Arrangements".

24.     In each of the attached job order H-2A contracts in calendar years 2016 through and including 2019, the Jones Defendants or the NCGA acting on behalf of the Jones Defendants promised or assured that he would make "no deduction not required by law will be made that brings the worker's hourly earnings below the higher of the federal

minimum wage and State minimum wage" and that "all working conditions comply with comply with applicable Federal and State minimum wage . . . and other employment-related laws."  Plaintiffs' Exhibits A-F attached at sections entitled "§18, More Details About the Pay", "9. Wage Rates, Special Pay Information and Deductions:", and "20 CFR 653.501 Assurances".

25.    In each of the job order H-2A contracts in calendar years 2016 through and including 2019, the Jones Defendants or the NCGA acting on behalf of the Jones Defendants promised "to abide by the regulations at 20 C.F.R. §§ 655.135 and 653.501, and adopted and incorporated "by reference all required assurances set out at 20 CFR § 655.122".  Plaintiffs' Exhibits A-F attached at sections entitled "Other Conditions of Employment, Clarifications, and Assurances".  Section 635.135(e) of Title 20 of the Code of Federal Regulations requires that "[d]uring the period of employment that is the subject of the *Application for Temporary Employment Certification*, the employer must comply with all applicable Federal, State and local laws and regulations, including health and safety laws."

26.    The assurances set out at 20 CFR § 655.122 also state that "[a]ll deductions must be reasonable."  20 C.F.R. § 655.122(p)(1).  They also state that [a] deduction that is primarily for the benefit or convenience of the employer will not be recognized as reasonable and therefore the cost of such an item may not be included in computing wages." 20 C.F.R. § 655.122(p)(2).  They further state that the "wage requirements of  [20 CFR] § 655.120 will not be met where undisclosed or unauthorized deductions . . . reduce the wage payment made to the employee below the minimum amounts required under this subpart [B

13

– Labor Certification Process for Temporary Agricultural Employment in the United States (H-2A Workers), 20 CFR §§ 655.100 through 655.185], or where the employee fails to receive such amounts free and clear because the employee kicks back directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. The principles applied in determining whether deductions are reasonable and payments are received free and clear, and the permissibility of deductions for payments to third persons are explained in more detail in 29 CFR Part 531."

27. The assurances set out in 20 C.F.R. § 655.135(h) further include the requirement that Jones Farms ". . . has not and will not intimidate, threaten, restrain, coerce, blacklist, discharge or in any manner discriminate against, and has not and will not cause any person to intimidate, threaten, restrain, coerce, blacklist, or in any manner discriminate against any person who has exercised or asserted on behalf of himself or others any right or protection afforded by this subpart" [Subpart B – Labor Certification Process for Temporary Agricultural Employment in the United States (H-2A Workers), 20 C.F.R. §§ 635.100 et seq.].

## VI. STATEMENT OF FACTS

### Hiring and Paying For H-2A Workers

28. In 2017, 2018, and 2019, defendants Jimmy D. Jones, Jr. and Barbara D. Jones (hereinafter "the individual Jones defendants") or their agents all personally participated in the day-to-day operation of and hiring decisions by Jones Farms that included both the employment of the named Plaintiffs and/or other migrant agricultural workers authorized to perform agricultural employment exclusively for the individual Jones defendants and Jones Farms (hereinafter referred

14

to collectively as the "Jones Defendants") under 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1184(c) pursuant to the terms of the H-2A Job Order employment contracts attached to this Complaint, the furnishing of the named Plaintiffs and some of those same migrant agricultural workers holding H-2A visas to work exclusively for Jones Farms to perform seasonal or temporary agricultural employment off-contract work for agricultural employers other than Jones Farms when those workers were not authorized to perform that other agricultural employment in the United States under 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1184(c) for those other agricultural employers, and the intentional using or causing to be used of one or more vehicles owned by one or more of the Jones Defendants to provide transportation for the named Plaintiffs and those same furnished migrant agricultural workers working off-contract.

29.    In 2017 and 2018, upon information and belief, both of the individual Jones defendants or their agents were physically present from time to time in the fields owned, operated or controlled by the Jones Defendants, and, upon information and belief, provided verbal and non-verbal guidance and instructions to the named Plaintiffs, their supervisors, and/or the H-2A workers that the named Plaintiffs seek to represent in this action for the H-2A employment Job Order contract work that was performed by those workers in 2017 and/or 2018.

30.    In 2017 and 2018, upon information and belief, both of the individual Jones defendants or their agents were physically present from time to time in the fields or labor camp owned, operated or controlled by the Jones Defendants, and, upon information and belief, and acting with the Jones Defendants through one or more agents of the Jones Defendants, provided verbal and non-verbal guidance, direction, and instructions to named Plaintiff Gonzalez regarding the Jones Defendants' use or causing to be used of one or more vehicles owned by one or more of the Jones Defendants to drive that vehicle as part of the provision of transportation for the migrant

15

agricultural workers working off-contract that the Jones Defendants furnished and transported for agricultural employers other than the Jones Defendants in those same years.

31.    In 2017 and 2018, at all times relevant to this Complaint during those same two years, upon information and belief, the Jones Defendants or their agents personally hired, supervised, disciplined and, in most cases, paid the named Plaintiffs and the other workers described in ¶¶12(a)-(b), and 13 through 18 above, inclusive.  In 2019, the Jones defendants, acting either directly or in combination with and through their agents as described in ¶40 below of this Complaint, made all decisions as to which Mexican nationals to hire to fill the H-2A positions of employment that are described in the H-2A job order employment contract that is marked as Plaintiffs' Exhibit E and attached to this Complaint.

31A.    As he did each year in the four or five years before 2019, in early February of this year, plaintiff Gonzalez contacted the H-2A recruiter, Juan Antonio Peñaflor Rodriguez, in Mexico that the Jones Defendants used to recruit Mexican nationals like Gonzalez and Godinez to make the necessary arrangements to return to work for the Jones Defendants in 2019 pursuant to the terms and conditions of the H-2A job order employment contract that is marked  as Plaintiffs' Exhibit E and attached to this Complaint.

31B.    As he did in 2018, in or about late February of this year, plaintiff Godinez also contacted the H-2A recruiter, Juan Antonio Peñaflor Rodriguez, in Mexico that the Jones Defendants used to recruit Mexican nationals like Gonzalez and Godinez to make the necessary arrangements to return to work in 2019 for the Jones Defendants pursuant to the terms and conditions of the H-2A job order employment contract that is marked  as Plaintiffs' Exhibit E and attached to this Complaint.

16

31C.   However, when plaintiffs Gonzalez and Godinez did make the contacts that are described in ¶¶31A and 31B above of this Complaint, Mr. Peñaflor told each of them that the Jones Defendants had not placed either of them on the list of workers to have their H-2A job order employment contracts renewed for H-2A work in North Carolina with the Jones Defendants in 2019.  Because of that, both named plaintiffs have sought to make alternative H-2A or other employment arrangements.

32.   At all times relevant to this complaint in 2017 or 2018 when the named Plaintiffs and the workers they seek to represent worked pursuant to the terms and conditions of one or more of the Job Order H-2A employment contracts that are attached to this Complaint, the Jones Defendants jointly and severally employed and were the employer of the named Plaintiffs and the members of the proposed NCWHA class and the proposed FLSA collective action within the meaning of N.C.Gen.Stat. §§ 95-25.2(3) and (5), 29 U.S.C. §§ 203(d) and 203(g), 29 C.F.R. § 791.2, 13 NCAC Tit. 12 § .0103, and 20 C.F.R. §§ 655.103(b) and 655.122.

33.   At all times relevant to this complaint in 2017 or 2018 when the Jones Defendants jointly and severally employed or furnished the named Plaintiffs and the workers they seek to represent to drive or perform off-contract work for agricultural employers other than the Jones defendants that was not pursuant to the terms and conditions of one or more of the attached Job Order H-2A employment contracts, the named Plaintiffs and the members of the proposed AWPA class were all employed and transported as migrant agricultural workers as defined in 29 U.S.C. § 1802(8) whose employment in agricultural employment was of a seasonal or other temporary nature, and who were required to be absent overnight from each such worker's permanent place of residence and whose off-contract work was not agricultural employment  authorized pursuant to 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1184(c).

17

34.    For all of 2017 and 2018, the Jones Defendants had a place of business in the U.S., a means to be contacted for employment, the ability to control the work of the named Plaintiffs and the work of all workers with H-2A visas obtained pursuant to the H-2A Job Order employment contracts cited in ¶8 of this Complaint in the hand harvest and production of flue-cured tobacco and sweet potatoes on real property owned or controlled by the Jones Defendants, and had a valid Federal Employer Identification Number.

35.    Before 2017, for four or five years defendant Jones Farms was a member of The North Carolina Grower's Association, Inc. (hereinafter "NCGA").  Through that membership, defendant Jones Farms regularly received educational materials, instruction, and guidance as to its obligations under the laws and regulations applying to the employment of workers under the H-2A program.

36.    As the terms "joint employment" and "employer" are defined in 20 C.F.R. § 653.103(b)(2015), at all times relevant to this action that occurred in 2016, Jones Farms jointly employed and was the employer with The North Carolina Grower's Association, Inc. (hereinafter "NCGA")  of the workers with an H-2A visa who worked in North Carolina based upon an H-2A labor certification that the NCGA obtained through the filing and processing of Clearance Order ETA Form 790 Job Order No. 10491165 (hereinafter referred to as "Job Order No. 10491165").  A true and correct copy of Job Order No. 10491165 is attached to this Complaint marked as "Plaintiff's Exhibit F".

37.    In each calendar year from 2016 through and including 2019, each job order H-2A contract filed by the Jones Defendants or filed by the NCGA on behalf of the Jones Defendants under the H-2A program contained an "Employer's Certification" signed by the

18

Jones Defendants or filed by the NCGA on behalf of the Jones Defendants that stated: "this job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job." Plaintiffs' Exhibits A-F attached in Form ETA 790.

38. In the attached 2017 job order H-2A contracts marked as Plaintiffs' Exhibits A and B, the Jones Defendants promised to pay the applicable AEWR for work in North Carolina under the H-2A program which was $11.27 per hour.

39. In the attached 2018 job order H-2A contracts marked as Plaintiffs' Exhibits C and D, the Jones Defendants promised to pay the applicable AEWR for work in North Carolina under the H-2A program which was $11.46 per hour.

39A. In the attached 2019 job order H-2A contract marked as Plaintiffs' Exhibit E, the Jones Defendants promised to pay the applicable AEWR for work in North Carolina under the H-2A program which was $12.25 per hour.

40. For 2017, 2018, and 2019, the Jones Defendants retained and paid Attorney Andrew M. Jackson, Attorney at Law, 407 College Street, Clinton, North Carolina, Clinton, North Carolina 28328 (hereinafter referred to as "Jackson"), as its agent in the United States of America to:

(a) craft/modify all aspects of the job order employment contracts for H-2A workers with Jones Farms,

(b) to conduct all interaction with the various branches of government involved in the certification of an application for alien employment under the H-2A program visa application either directly or indirectly through the use of the

19

private employment service agency operated by Juan Del Alamo in Mexico that the Jones Defendants designated to perform that function,

(c)     track the status of the H-2A workers that the Jones Defendants preferred to employ in taking the actions required to obtain an H-2A visa in 2017 and 2018,

(d)     make adjustments to the status of the H-2A workers that the Defendant preferred to employ based upon the information that Jackson received from the private employment service agency operated in Mexico by Juan Del Alamo with Juan Antonio Peñaflor Rodriguez as one of its recruiters that the Jones Defendants designated to perform that function in Mexico,

(e)     provide all necessary recruitment services, including but not limited to, visa processing assistance, for the H-2A workers that the Jones Defendants preferred to employ after those workers had been identified by the Jones Defendants through the use of the private employment service agency operated in Mexico by Juan Del Alamo with Juan Antonio Peñaflor Rodriguez as one of its recruiters that was designated to perform that function in Mexico by the Jones Defendants,

(f)     provide all necessary recruitment for the timely replacement of H-2A workers that the Jones Defendants preferred to employ if it was determined that any of those worker(s) were not available for employment with the Jones Defendants in any particular season through the use of the private employment service agency operated in Mexico by Juan Del Alamo with Juan Antonio Peñaflor

20

Rodriguez as one of its recruiters that was designated to perform that function by the Jones Defendants,

(g)    provide consulting services as to relevant developments in the laws and court decisions affecting the Jones Defendants' employment of H-2A workers.

41.    For all of the 2016 agricultural season in North Carolina and for several years before that, the Jones Defendants were members of the NCGA. As part of their membership in the NCGA, the Jones Defendants paid the NCGA to act as its agent in the United States of America to perform some if not all of the services described in ¶40(a)-(g) above of this Complaint.

42.    In or about late 2016 or early January 2017, the Jones Defendants decided to terminate their membership in the NCGA and their participation in the collective bargaining agreement ("CBA") that the NCGA has with the Farm Labor Organizing Committee, AFL-CIO ("hereinafter referred to as "FLOC") because of the opposition of the Jones Defendants to the public policy of North Carolina declared in material part in N.C.Gen.Stat. § 95-78 ". . . that the right of persons to work shall not be denied or abridged on account of membership . . . in any labor union or labor organization or association."

43.    Plaintiff Gonzalez has been and continues to be a member in good standing of FLOC since at least January 1, 2016. Plaintiff Godinez has been and continues to be a member in good standing of FLOC since at least September 2018. Upon information and belief, the Jones Defendants have known of the FLOC membership of Plaintiff Godinez since August 2018 from reports by H-2A co-workers to the Jones Defendants. The Jones Defendants have known of plaintiff Gonzalez's membership in FLOC for the entire period

21

that he was employed by one or more of the Jones Defendants based upon the wage deductions for FLOC union dues of Gonzalez that the Jones Defendants made directly from the weekly wages due Gonzalez pursuant to a written authorization to do so authorized by N.C.Gen.Stat. § 95-25.8.

44.　For each season in 2017 and/or 2018 that each of the named plaintiffs and the H-2A workers that they seek to represent in the FLSA collective action and NCWHA class action described in ¶¶65-79 below traveled directly from Mexico to North Carolina to work for one or more of the Jones Defendants under the H-2A program, each of the plaintiffs and the members of the FLSA collective action and NCWHA class action described in ¶¶69-84 below were required to pay a total of approximately USD $655 for the following expenses: USD $190 to the U.S. Consulate in Mexico for an H-2A visa, approximately USD $10 for visa processing fees to Defendant's agent Juan Del Alamo in Mexico, approximately USD $94 (MXP $1855) for a three-stage bus ticket from the state of Nayarit starting in Ixcuintla going through Tepic, from Tepic to Guadalajara, and from Guadalajara to Monterrey, Mexico, approximately USD $60/each for the three nights they were required to remain in in a hotel in Monterrey, Mexico as a condition of obtaining the required Consular interview in that city to obtain an H-2A visa to be employed by the Defendant, USD $6.00/each for the I-94 border crossing card required by the U.S. government to enter the USA as a non-resident alien, USD $225 each for another one-way bus ticket from Monterrey, Mexico to Bailey, North Carolina, and $12.07/day for five (5) days' subsistence (USD $60.35) as each of the plaintiffs and the member of the FLSA collection action and NCWHA class action were more than a thousand miles from home without any capacity to do anything but

22

purchase prepared food on a retail basis in the way that is described in 29 C.F.R. §§ 778.217(a) and 778.217(b)(3).

45.    All of the expenses described in ¶44 above of this Complaint were primarily for the benefit or convenience of the Jones Defendants and an incident of and necessary to the employment of the Plaintiffs and the members of the FLSA collective and NCWHA class action by and travel to work for the Jones Defendants in both 2017 and 2018 within the meaning of 29 C.F.R. §§ 531.3(d)(1), 531.32(a), 531.32(c), 778.217(a), and 778.217(b)(3) and 13 NCAC Tit. 12 § .0301(d).

46.    In the four (4) H-2A job order employment contracts for 2017 and 2018 that are attached to this Complaint, the Jones Defendants disclosed promised wages in a contract provision that mirrored the regulatory requirement of 20 C.F.R. § 655.122(h)(1)(2015) in the form of reimbursement after completion of 50% of the contract period in the H-2A job order employment contract for the subsistence costs of at least $12.07 per day of inbound travel from the place from which Plaintiffs Gonzalez, Godinez and the members of the FLSA collective action and NCWHA class action came to work for the Jones Defendants to the place of their employment in 2017 and 2018 with the Jones Defendants.

47.    The Jones Defendants did not fully reimburse the Plaintiffs and the members of the FLSA collective and NCWHA class action for all of those inbound expenses that are described in ¶¶44-46 above of this Complaint at any time in 2017 and/or 2018 during the time periods that the Jones Defendants employed them or in the time periods on or before the first regular payday during those same time periods.

23

48.     The failure of the Jones Defendants to reimburse the named plaintiffs and the members of the FLSA collective and NCWHA class action for all of those expenses caused a *de facto* wage deduction and wage kickback to the Jones Defendants which reduced the wages that the named plaintiffs and the members of the FLSA collective and NCWHA class action received for the first workweek of work that they performed for the Jones Defendants below the minimum rate required by 29 U.S.C. § 206(a) of $7.25 per hour and the minimum hourly AEWR rate for both 2017 and 2018 in violation of N.C.Gen.Stat. § 95-25.6. After the named Plaintiffs Gonzalez, Godinez, and the members of the FLSA collective action and NCWHA class action completed work 50% of the H-2A job order employment contract, the continuing failure of the Jones Defendants to reimburse the Plaintiffs and the members of the FLSA collective and NCWHA class action also constituted a failure to pay wages when due in violation of N.C.Gen.Stat. § 95-25.6 and a breach the terms of the Jones Defendants' H-2A job order employment contracts with the named Plaintiffs and the members of the FLSA collective and NCWHA class action.

49.     For each flue-cured tobacco planting, growing and harvest season, and sweet potato planting, growing, and harvest season that occurred in or around Nash County, North Carolina in calendar years 2017 and 2018, the Jones Defendants imported and/or employed Gonzalez, Godinez, and other H-2A workers under the 2017 and 2018 Job Order H-2A employment contracts attached to this Complaint to perform all aspects of that work. That work included the following:

(a)     For plaintiff Gonzalez for the first regular payday for the first workweek falling after the approximate April 7, 2017 date that he started work for the Jones

Defendants in 2017, upon information and belief and to the best of his recollection, plaintiff Gonzalez worked approximately 40 hours or less cutting sweet potato plants and working on sweet potato beds for which the Jones Defendants paid him wages of approximately $450 before the *de facto* wage deduction and kickback in the amount and in the manner described in ¶¶44-48, inclusive, above of this Complaint.

(b)     For plaintiff Gonzalez for the first regular payday for the first workweek ending on or about April 25, 2018 falling after the approximate April 17, 2018 date that the Jones Defendants provided him to start work with Bissette Farms, Inc. in or about Middlesex, North Carolina, plaintiff Gonzalez worked about 26 hours setting tobacco plants or cutting sweet potato plants for which plaintiff Gonzalez was paid wages of approximately $300 before the *de facto* wage deduction and kickback in the amount and in the manner described in ¶¶44-48, inclusive, above of this Complaint.

(c)     For plaintiff Godinez for the first regular payday on June 7, 2018 for the first workweek falling after the approximate June 1, 2018 date that he started work for the Jones Defendants in 2017, plaintiff Gonzalez worked approximately 23½ hours or less cutting sweet potato plants and working on sweet potato beds for which the Defendant paid him monetary wages of approximately $269 before the *de facto* wage deduction and kickback in the amount and in the manner described in ¶¶44-48, inclusive, above of this Complaint.

50.     In both 2017 and 2018, the Jones Defendants did not pay each named Plaintiff and the members of the FLSA collective and NCWHA class action a total of approximately $250 as a "wage" or amount that the Jones Defendants promised to pay when the Jones Defendants had a policy or practice of making those payments pursuant to the terms of the

Jones Defendants' job order H-2A contracts with the named Plaintiffs and the members of the FLSA collective and NCWHA class action for the cost of such H-2A worker's travel and subsistence for food when they returned to their respective homes in Mexico after the end of their employment by the Jones Defendants in violation of the terms of the job order H-2A contracts of the Jones Defendants and a failure to pay all wages when due under the NCWHA.

51.     In 2017 and 2018, Plaintiff Gonzalez was only paid for approximately half of the hours that he spent driving and transporting other workers to and from various worksites and less than half of the hours he spent driving and transporting other H-2A workers to and from commercial sites on the weekends on behalf of and at the request of the Jones Defendants as described in ¶¶14 and 16 above.

52.  Based upon the actions of the Defendant that are described in ¶51 above, in 2017 the Jones Defendants failed to pay plaintiff Gonzalez more than $1,000 in wages when due for approximately 200 hours of work at $11.27 per hour in 2017 in violation of N.C.Gen.Stat. § 95-25.6 and the job order H-2A contract.

53.     Based upon the actions of the Defendant that are described in ¶51 above, in 2018 the Jones Defendants failed to pay plaintiff Gonzalez approximately $650 in wages when due for approximately 115 hours of work at $11.46 per hour in 2018 in violation of N.C.Gen.Stat. § 95-25.6 and the job order H-2A contract.

54.     For the 2018 agricultural season, the Jones Defendants directly hired, employed, supervised the named Plaintiffs and the H-2A workers to hand harvest sweet potatoes pursuant to the terms of the H-2A job order employment contracts that are copied

26

in Plaintiffs' Exhibit A and Plaintiffs' Exhibit B attached on land that was owned and controlled by the Jones Defendants.

55. Each of the Clearance Orders filed by the Jones Defendants for the 2018 season provided a job description and wage rates for each crop activity. For the hand harvest of sweet potatoes all of the H-2A Job Order Employment Contracts that are attached to this Complaint specified that the named Plaintiffs and the H-2A workers employed by the Jones Defendants to perform that work would be paid on a piece rate basis of $11.46/hour or $.50 per bucket, whichever was higher.

56. Pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2), the wage rates that are described in those same H-2A Job Order Employment Contracts that are attached to this Complaint were and are the Jones Defendants' employment practices and policies with regard to promised wages and the day and place for payment of those promised wages that the Jones Defendants disclosed to Plaintiffs Gonzalez and Godinez and the members of the NCWHA class and the FLSA collective action that the those named Plaintiffs seek to represent in this action.

57. In 2018, when the Jones Defendants paid $.50 per bucket of sweet potatoes harvested regardless of the number of hours worked so that the named plaintiffs Gonzalez and Godinez and the members of the NCWHA class action whom the Jones Defendants jointly and severally employed did not receive at least $11.46 per hour for all hours worked in the hand harvest of sweet potatoes on land owned or controlled by the Jones Defendants, and the Jones Defendants failed to pay all wages when due in violation of N.C.Gen.Stat. § 95-25.6. For both plaintiffs Gonzalez and Godinez, this occurred in at least the workweeks

27

ending on Thursday, August 30, 2018, Thursday, September 6, 2018, Thursday, September 13, 2018, and Thursday, September 20, 2018.

58.     Plaintiff Gonzalez complained more than once to the head supervisor Abraham and to his immediate supervisor Antonio Palacios in 2018 about this continuing failure to pay him all wages when due for his driving and transportation work for the Jones Defendants in 2017 and 2018, and for the failure of the Jones Defendants to pay him and his co-workers for all hours they worked harvesting sweet potatoes on a piece rate basis at the adverse effect wage rate minimum hourly rate of $11.46 per hour regardless of the number of buckets or units of sweet potatoes harvested by a particular worker.

59.     As a FLOC union member, plaintiff Gonzalez also encouraged FLOC union member plaintiff Godinez, other FLOC union members, and other co-workers to take legal action to get paid for all hours they worked harvesting sweet potatoes on a piece rate basis at the adverse effect wage rate minimum hourly rate of $11.46 per hour regardless of the number of buckets or units of sweet potatoes harvested by a particular worker.  The desire of both plaintiff Gonzalez and plaintiff Godinez to take that action at the appropriate opportunity became known to the Jones Defendants before the two named plaintiffs left North Carolina in 2018 and the employ of the Jones Defendants.

60.     In or about late September 2018, Antonio Palacios told plaintiff Gonzalez that defendant Jimmy Jones, Jr. was mad at Gonzalez for engaging in the activity that is described in ¶¶58-59 above of this Complaint, and advised plaintiff Gonzalez that he should stop that activity as there would be no compensation for Gonzalez or his co-workers based upon those complaints.

61.     In retaliation for and to discriminate against Gonzalez for those complaints, and in discrimination against Godinez for associating himself with Gonzalez in connection with those complaint, and acting through their fully authorized agent Juan Antonio Peñaflor Rodriguez, the Jones Defendants declined to re-hire plaintiff Gonzalez and plaintiff Godinez to work as an H-2A worker for the Jones Defendants in the 2019 agricultural season pursuant to the terms of the H-2A job order contract that is attached to this Complaint marked as Plaintiffs' Exhibit E.

62.     The motivating or moving cause for the decision of the Jones Defendants to decline to re-hire both named plaintiffs for the 2019 agricultural season pursuant to the terms of the H-2A job order employment contract that is copied in Plaintiffs' Exhibit E attached to this Complaint was their exercise of the statutory rights guaranteed by N.C.Gen.Stat. §§ 95-78 and 95-81 that are described in this Complaint.

63.     The actions of the Defendants that are described in ¶¶31A through 31C and ¶¶58 through 62 above of this Complaint were made in conscious, intentional disregard of and indifference to the rights and safety of the two (2) named Plaintiffs under N.C.Gen.Stat. §§ 95-78 and 95-81 when the Jones Defendants knew or should have known were reasonably likely to result in injury, damage, or other harm to the two (2) named Plaintiffs.

64.     Upon information and belief, in April 2017 and again in April 2018, one or more of the Jones Defendants or their authorized agents assisted Plaintiff Gonzalez to obtain a Class C driver's license from the North Carolina Division of Motor Vehicles, or plaintiff Gonzalez did so on

his own. That driver's license did not authorize Plaintiff Gonzalez to drive commercial motor vehicles which were designed to transport 16 or more passengers, including the driver.

65.     Upon information and belief, the vehicles described or referred to in ¶¶14 and 16 above of this Complaint did not have an operable air or electric horn, had windshields and windows that had cracks or opaque obstructions which obscure vision, and had tires which did not have 2/32 inch tread depth.

66.     Upon information and belief, the transportation described in ¶¶14 and 16 above of this Complaint did not occur only in circumstances for which there was coverage under the Workers' Compensation Act, N.C.Gen.Stat. §§97-1 et seq. based upon whatever workers' compensation policy that the Jones Defendants and the various other agricultural employers named or described in ¶¶13 and 15 above of this Complaint had in effect during the time of that transportation of Plaintiffs Gonzalez, Godinez, and the AWPA class of migrant agricultural workers that Plaintiffs Gonzalez and Godinez seek to represent .

67.     Upon information and belief, the vehicles described or referred to in ¶¶14 and 16 above of this Complaint did not have vehicle liability insurance or workers' compensation insurance which covered the agricultural employers other than the Jones Defendants and the Jones Defendants in the event of an accident causing personal injury to Plaintiffs Gonzalez, Godinez, or any of the workers described in those same paragraphs in the amount of not less than $100,000 for each seat in the vehicle.

67A.    After the Jones Defendants did not renew the H-2A job order employment contracts of the two named plaintiffs in February 2019, those two named plaintiffs filed a written retaliation complaint with the North Carolina Department of Labor ("NCDOL") on March 20, 2018 pursuant to N.C.Gen.Stat. § 95-242(a) in which they alleged that the Jones Defendants had

discriminated and retaliated against them because those two named plaintiffs had provided information and complained to the Jones Defendants about the failure to pay wages when due that are described in ¶¶58-61 above.

67B.    The two named plaintiffs will request a right to sue letter from the NCDOL pursuant to N.C.Gen.Stat. § 95-242(c) authorizing them to bring a claim under the REDA against the Jones Defendants.

68.    Through their multi-year membership in the NCGA and the education and training that the Jones Defendants received through the NCGA, received through being the subject of one or more U.S. Department of Labor (hereinafter "DOL") investigations of the Jones Defendants, and through their access to the professional attorney services of attorney Jackson, by January 1, 2017, each of the Jones Defendants had been well-educated in the wage payment and transportation requirements of the FLSA, the NCWHA, and the AWPA.

## VII.    NCWHA CLASS ALLEGATIONS

69.    Paragraphs 6 through 68 are realleged and incorporated herein by reference.

70.    The named plaintiffs seek to represent a class of persons under Rule 23(b)(3), Fed. R. Civ. P., for back wages and liquidated damages under N.C. Gen. Stat. §§ 95-25.6, 95-25.13(2), 95-25.22, and 95-25.22(a1) and 13 NCAC Tit.12 .0803 ("NCWHA Class") against the Jones Defendants, jointly and severally.  The "NCWHA Class consists of all H-2A workers who were employed or jointly employed by one or more of the Jones Defendants to perform agricultural work in 2017 and/or 2018 for the Jones Defendants pursuant to the terms of and promised wages in the H-2A Job Order employment contracts that are attached to this Complaint marked as Plaintiffs' Exhibits A-D.  That NCWHA class consists of the following four (4)

subclasses based upon the Jones Defendants failure to pay all promised wages when due for all hours worked for the following work:

(a) in both 2017 and 2018 on or before their first regular payday for the first workweek in both 2017 and 2018 that those workers were employed or jointly employed to perform any such work by one or more of the Jones Defendants at the promised wages AEWR rate pursuant to N.C.Gen.Stat. § 95-25.13(2) and the H-2A job order employment contract provision that mirrors 20 C.F. R. §655.122(l);

(b) during each workweek in 2018 when the gross amount of wages paid for that workweek was not equal to or greater than the product of the total number of hours actually worked in that same workweek and the AEWR of $11.46 per hour, **or** the total number of buckets of sweet potatoes that each worker harvested at $.50 per bucket, **whichever amount was greater**.

(c) promised wages in the form and in the full amount of the wage described in ¶50 above of the Complaint based upon the promised wage disclosed pursuant to N.C.Gen.Stat. § 95-25.13(2) and 13 NCAC Tit. 12 .0803 and those terms of the attached H-2A Job Order employment contract that mirror the regulatory requirement of 20 C.F.R. § 655.122(h)(2)(2015).

(d) promised wages in the form and in the full amount of the wage described in ¶46 above of the Complaint based upon the promised wage disclosed pursuant to N.C.Gen.Stat. § 95-25.13(2) and 13 NCAC Tit. 12 .0803 and those terms of the attached H-2A Job Order employment contract that mirror the regulatory requirement of 20 C.F.R. § 655.122(h)(2)(2015).

32

71.     Joinder of all class members for the proposed NCWHA Class would be impracticable, if not impossible, based in part upon the fact that the named plaintiffs and all of the proposed class are migrant nationals of the Republic of Mexico, do not speak English, and do not currently possess the right to lawfully enter or remain within the U.S.A.  Upon information and belief, the number of individuals in the proposed NCWHA Class would exceed 75 people.

72.     The questions of law or fact which are common to the members of the NCWHA Promised Wage Class and which predominate over any other questions affecting only individual members of the class under Rules 23(a)(2) and 23(b)(3), Fed.R.Civ.P., are:

(a)     Whether the Jones Defendants were joint employers of the named plaintiffs and the H-2A workers that performed the sweet potato harvesting work in 2017 and 2018 that are described in Plaintiffs' Exhibit A-D attached on land that was owned or controlled by the Jones Defendants?

(b)     Because of the *de facto* wage deductions described in paragraphs 44-49, inclusive, above in this Complaint that occurred on or before their first regular payday for the first workweek in both 2017 and 2018 that those workers were employed or jointly employed to perform any sweet potato harvesting work, did the Jones Defendants fail to compensate the named plaintiffs and those other class members at the AEWR rate?

(c)     Were there workweeks during 2018 when the gross amount of wages paid by one or more of the Jones Defendants for the harvesting of sweet potatoes for that workweek were not equal to or greater than the product of the total number of hours actually worked in that same workweek and the AEWR of $11.46 per hour in 2018, **or** the total number of buckets of sweet potatoes that each worker harvested at $.50 per bucket, **whichever amount was greater**?

33

(d)     Were there workweeks during 2017 and 2018 when promised wages in the form and in the full amount of the wage described in ¶50 above of the Complaint based upon the promised wage disclosed pursuant to N.C.Gen.Stat. § 95-25.13(2) and 13 NCAC Tit. 12 .0803 and those terms of the attached H-2A Job Order employment contract that mirror the regulatory requirement of 20 C.F.R. § 655.122(h)(2)(2015) were not paid in full when they were due in violation of N.C.Gen.Stat. § 95-25.6?

(e)     Were there workweeks during 2017 and 2018 when promised wages in the form and in the full amount of the wage described in ¶46 above of the Complaint based upon the promised wage disclosed pursuant to N.C.Gen.Stat. § 95-25.13(2) and 13 NCAC Tit. 12 .0803 and those terms of the attached H-2A Job Order employment contract that mirror the regulatory requirement of 20 C.F.R. § 655.122(h)(2)(2015) were not paid in full when they were due in violation of N.C.Gen.Stat. § 95-25.6?

73.     The claims of Plaintiffs are typical of the claims of the NCWHA Class of persons under Rules 23(a)(3) and 23(b)(3), Fed.R.Civ.P, in that the named Plaintiffs they each have a NCWHA claim of the type described in paragraphs 66(a)-(e) above that turns in part on the status of the Jones Defendants as joint employers under 29 C.F.R. § 791.3 and the NCWHA.

74.     Plaintiffs' interests in the claims are in no way antagonistic or adverse to those of other NCWHA Class members.

75.     Plaintiffs will fairly and adequately represent the interests of the NCWHA Class.

76.     The undersigned counsel Robert J. Willis is an experienced litigator who has been named counsel for many class actions involving similar claims to those raised in this action.

## VIII.   FLSA COLLECTIVE ACTION ALLEGATIONS

77.     Paragraphs 6 through 68 are realleged and incorporated herein by reference.

34

78.     Pursuant to the collective action procedure specified at 29 U.S.C. §216(b) and the First Claim for Relief, the named Plaintiffs file this collective action for each similarly situated person who files a Consent to Sue required by 29 U.S.C. §§ 216(b) and 256 within the three-year time period immediately preceding the date on which this action is filed and continuing thereafter until judgment is entered by the Court who was jointly employed by the Jones Defendants under the H-2A program at any time in 2017 or 2018 to produce, plant, set or cut sweet potato and tobacco plants on land that was owned or controlled by the Jones Defendants for the production of agricultural products for sale in interstate commerce.

79.     This FLSA collective action for the First Claim for Relief is on behalf of those H-2A workers whom the Jones Defendants jointly employed for at least the first workweek when the workers who were employed or furnished to produce, plant, set or cut sweet potato and tobacco plants in 2017 or 2018 during the time periods covered by each H-2A job order that is attached to this complaint.

80.     As a term and condition of that joint employment of those same H-2A workers under the H-2A program by the Jones Defendants and one or more of the other agricultural employers described in paragraphs 13 and 15 above of this Complaint, the named plaintiffs Gonzalez and Godinez and those other H-2A workers were required to pay the de facto wage deductions that are described in paragraphs 44-49, inclusive, above of this Complaint, thereby reducing the weekly wages that the named Plaintiffs Gonzalez, Godinez, and those other H-2A workers received free and clear for the work they performed in the first workweek in North Carolina below the minimum wage required by 29 U.S.C. §§ 206(a) and 216(b).

81.     The *de facto* wage deductions referred to in ¶¶44-49 and 80 above were illegal under 20 C.F.R. §§ §§ 655.122(m), 655.122(p)(1) and 655.135(j)(2010), 29 C.F.R. §§ 531.2,

531.3(b), 531.3(d)(1), 531.29, 531.32(a), 531.32(c), 531.35, 778.217(a), and 778.217(b)(3) as to what deductions and charges are permitted to wages paid.

82. The Jones Defendants and, to the extent that any work was performed for one or more of the other agricultural employers described or named in ¶¶13 and 15 above of this Complaint in the first workweek of each plaintiffs or collective action member's work in North Carolina in 2017 or 2018, both the Jones Defendants and that other agricultural employer jointly and severally employed both named Plaintiffs and more than 30 other migrant agricultural workers who performed off-contract work that they were not authorized to perform pursuant to a visa issued under the authority detailed in 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and 1188(a)(1) in the setting or cutting of sweet potato plants and/or tobacco in at least the first workweek after those same named Plaintiffs and their other H-2A co-workers arrived in North Carolina after their transportation directly from Mexico to North Carolina.

83. This collective action by similarly situated persons under 29 U.S.C. §216(b) is based upon the failure of the Jones Defendants and, where it occurred, the failure of the Jones Defendants and one or more of the other agricultural employers named or referred to in ¶¶13 and 15 above, to pay free and clear to all named Plaintiffs and the members of this FLSA collective action on or before their regular payday in an amount equal to at least $7.25/hour for each hour or part of an hour worked by those same employees in their first workweeks for the defendants as a result of the *de facto* wage deductions described in paragraphs 44-49, inclusive, above of this Complaint as a condition of employment with the Jones Defendants during 2017 and/or 2018.

84. As a result of this failure of the Jones Defendants to pay wages free and clear at the minimum rate required by 29 U.S.C. § 206(a) in the manner required by law, the wages that those same named Plaintiffs and the members of the collective action received receive free and clear from

the Jones Defendants and the other agricultural employers described or named in ¶¶13 and 15 above of this Complaint on or before their regularly scheduled payday for at least the first workweek that those same named Plaintiffs and the members of the collective action performed work in North Carolina for the Jones Defendants or the other agricultural employers to whom or which the Jones Defendants furnished those workers in both 2017 and 2018 were less than the minimum wage required by 29 U.S.C. §206 on a weekly basis for each hour or part of an hour of actual work that those same named Plaintiffs and each such similarly situated person was jointly or severally employed by the Jones Defendants in at least the first workweek of each agricultural season specified in the job orders under which each such person was so employed.

## IX.    AWPA CLASS ALLEGATIONS

85.    Paragraphs 6 through 68 are realleged and incorporated herein by reference.

86.    The named plaintiffs seek to represent a class of persons under Rule 23(b)(3), Fed. R. Civ. P., for statutory damages under 29 U.S.C. § 1854(c)(1)("AWPA Class") against the Jones Defendants, jointly and severally.  The "AWPA Class consists of all migrant agricultural workers described in ¶¶13-16 above of this Complaint for whom one or more of the Jones Defendants intentionally used or caused to be used the vehicle(s) described in ¶¶14 and 16 above to transport to and from the agricultural work that is described in ¶¶13-16 above agricultural employers other than the Jones Defendants to perform various forms of hand labor in intentional violation of the AWPA in the following ways:

(a)    For the 2017 season, the Jones Defendants, jointly and severally, failed to ensure that the vehicles used for the transportation of Plaintiff Gonzalez and more than 30 other migrant agricultural workers conformed to the standards detailed in 29 C.F.R. §§ 500.102(d), 500.104(c), 500.104(e), and 500.104(g) in violation of 29 U.S.C. § 1841(b)(1)(A).

37

(b)     For the 2017 season, the Jones Defendants, jointly and severally, failed to ensure that the person used to drive the vehicles used for the transportation of Plaintiff Gonzalez and more than 30 other migrant agricultural workers had a currently valid motor vehicle operator's permit or license, as provided by North Carolina law, to operate the vehicle described in ¶¶14 and 16 above of this Complaint in violation of 29 C.F.R. § 500.100(a) and 29 U.S.C. § 1841(b)(1)(B).

(c)     For the 2017 season, the Jones  Defendants, jointly and severally, failed to have an insurance policy that met the requirements of 29 U.S.C. § 1841(b)(1)(C) and 29 C.F.R. §§ 500.120, 500.121(a)-(e), and 500.122(a)(1)-(2) in their causing of the transportation of Plaintiff Gonzalez and more than 30 other migrant agricultural workers.

(d)     For the 2018 season, the Jones Defendants, jointly and severally, failed to ensure that the vehicles used for the transportation of Plaintiffs Gonzalez, Godinez, and more than 30 other migrant agricultural workers conformed to the standards detailed in 29 C.F.R. §§ 500.102(d), 500.104(c), 500.104(e), and 500.104(g) in violation of 29 U.S.C. § 1841(b)(1)(A).

(e)     For the 2018 season, the Jones Defendants, jointly and severally, failed to ensure that the person used to drive the vehicles used for the transportation of Plaintiffs Gonzalez, Godinez, and more than 30 other migrant agricultural workers had a currently valid motor vehicle operator's permit or license, as provided by North Carolina law, to operate the vehicle described in ¶¶14 and 16 above of this Complaint in violation of 29 C.F.R. § 500.100(a) and 29 U.S.C. § 1841(b)(1)(B).

(f)     For the 2018 season, the Jones  Defendants, jointly and severally, failed to have an insurance policy that met the requirements of 29 U.S.C. § 1841(b)(1)(C) and 29 C.F.R. §§

38

500.120, 500.121(a)-(e), and 500.122(a)(1)-(2) for their causing of the transportation of Plaintiffs Gonzalez, Godinez, and more than 30 other migrant agricultural workers.

87.    Joinder of all class members for the proposed AWPA Class would be impracticable, if not impossible, for the same reasons alleged in ¶71 above of the Complaint. Upon information and belief, the number of individuals in the proposed AWPA Class for both 2017 and 2018 exceeds 50 people.

88.    The questions of law or fact which are common to the members of the AWPA Class and which predominate over any other questions affecting only individual members of the class under Rules 23(a)(2) and 23(b)(3), Fed.R.Civ.P., are:

(a)    Whether, when the named Plaintiffs and the other workers described in ¶¶14 and 16 above of this Complaint who performed the work for the other agricultural employers described in ¶¶13 and 15 above of this Complaint and who were transported to and from the worksites for that work as described in ¶¶14 and 16 above of this Complaint were migrant agricultural workers as defined in 29 U.S.C. § 1802(8) and entitled to the protection of the AWPA at the time that they performed that work and transported in the manner and to the extent alleged?

(b)    Whether the statutory violations described in ¶¶81(a)-(f) occurred on a class wide basis?

89.    The claims of named Plaintiffs are typical of the claims of the AWPA Class of persons under Rules 23(a)(3) and 23(b)(3), Fed.R.Civ.P, in that the two named Plaintiffs each have an AWPA claim of the type described in ¶¶86(a)-(f) above that turns on the status of all of those persons as "migrant agricultural workers" under 29 U.S.C. § 1802(8) at the time that the

named Plaintiffs and those workers performed the work that is described in ¶¶13-16 above of this Complaint.

90.     The interests of both named Plaintiffs in the AWPA claims they have alleged are in no way antagonistic or adverse to those of other AWPA Class members.

91.     The named Plaintiffs will fairly and adequately represent the interests of the AWPA Class.

## X.     FIRST CLAIM FOR RELIEF (FLSA)

92.     Paragraphs 6 through 68 and 77 through 84, inclusive, above are realleged and incorporated herein by reference.

93.     The named defendants did not pay the named plaintiffs and the members of the FLSA collective action that are described in ¶¶77-84 above at the rate required by 29 U.S.C. § 206(a) for the work described in ¶¶44-49 above of this Complaint based upon the Jones Defendants' *de facto* wage deductions from the wages due the named Plaintiffs and the members of the FLSA collective action as a term and condition of employment and the Jones Defendants' failure to reimburse as alleged in ¶¶47-48 above for the *de facto* wage deductions that are described in ¶¶44-49, inclusive, above when those expenditures were primarily for the benefit of the defendants.

94.     As a result of these actions of the named defendants in violation of the rights of those same named plaintiffs and the members of the FLSA collective action that are described in ¶¶77-84 above, those same named plaintiffs and the members of that same FLSA collective action have suffered damages in the form of unpaid wages at the minimum rate required by the FLSA and back wages and liquidated damages may be recovered, jointly and severally against all defendants, under 29 U.S.C. §§ 206(a) and 216(b).

## XI.     SECOND CLAIM FOR RELIEF (NCWHA)

95.    Paragraphs 6 through 76, inclusive, above are realleged and incorporated herein by reference.

96.    In both 2017 and 2018, the Jones Defendants failed to pay all wages when due at the promised wages AEWR rate pursuant to N.C.Gen.Stat. § 95-25.13(2) and the H-2A job order employment contract provision that mirrors 20 C.F. R. §655.122(l) to the named Plaintiffs and the workers who are members of the NCWHA class and subclasss described in ¶¶70 and 70(a) on or before their first regular payday for the first workweek in both 2017 and 2018 that the named Plaintiffs and the workers who are members of the NCWHA class and subclasss described in ¶¶70 and 70(a) above of this Complaint who were employed or jointly and severally employed by the Jones Defendants to perform agricultural employment for one or more of the Jones Defendants or for  one of the agricultural employers described in ¶¶13 and 15 above of this Complaint to whom the Jones Defendants furnished and transported them.

97.    In 2018, the gross amount of wages that the Jones Defendants paid to the named Plaintiffs and the members of the NCWHA class and subclass described in ¶¶70 and 70(b) above of this Complaint for more than one workweek was not equal to or greater than the product of the total number of hours actually worked in that same workweek and the AEWR of $11.46 per hour, or the total number of buckets of sweet potatoes that each worker harvested at $.50 per bucket, whichever amount was greater.

98.    In both 2017 and 2018, the Jones Defendants did not pay to the named Plaintiffs and the members of the NCWHA class that are described in ¶¶70 and 70(c) above of this Complaint promised wages in the form and in the full amount of the wage described in ¶50 above of the Complaint based upon the promised wage disclosed pursuant to N.C.Gen.Stat. § 95-

25.13(2) and 13 NCAC Tit. 12 .0803 and those terms of the attached H-2A Job Order employment contract that mirror the regulatory requirement of 20 C.F.R. § 655.122(h)(2)(2015).

99.     In both 2017 and 2018, the Jones Defendants did not pay to the named Plaintiffs and the members of the NCWHA class that are described in ¶¶70 and 70(d) above of this Complaint promised wages in the form and in the full amount of the wage described in ¶46 above of the Complaint based upon the promised wage disclosed pursuant to N.C.Gen.Stat. § 95-25.13(2) and 13 NCAC Tit. 12 .0803 and those terms of the attached H-2A Job Order employment contract that mirror the regulatory requirement of 20 C.F.R. § 655.122(h)(1)(2015).

100.     In both 2017 and 2018, the Jones Defendants did not pay named Plaintiff Gonzalez the wages described in ¶¶51-53 above of this Complaint based upon the promised wage disclosed pursuant to N.C.Gen.Stat. § 95-25.13(2) and 13 NCAC Tit. 12 .0803 and those terms of the attached H-2A Job Order employment contract that mirror the regulatory requirement of 20 C.F.R. § 655.122(l)-(m)(2015).

101.     As a result of these actions of the Defendants in violation of their rights under N.C.G.S. §§95-25.6, Plaintiffs and the members of the NCWHA Class have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendants, jointly and severally, under N.C.G.S. §§ 95-25.22(a) and 95-25.22(a1).

## XII.    THIRD CLAIM FOR RELIEF (AWPA)

102.     Paragraphs 6 through 68 and paragraphs 85 through 91, inclusive, above are realleged and incorporated herein by reference.

103.     In the Third Claim for Relief based on the AWPA, the two (2) named plaintiffs Gonzalez and Godinez allege the following intentional AWPA violations on behalf of themselves

and the class and subclasses defined in ¶¶86 and 86(a)-(f) above of this Complaint against the Jones Defendants, jointly and severally.

104.    Pursuant to Rule 23(b)(3), that class and those subclasses consist of all migrant and seasonal agricultural workers (as the terms "migrant agricultural worker" is defined in 29 U.S.C. §§ 1802(8) § 500.20(p)) who performed temporary or seasonal work in agriculture when they were jointly and severally employed by one or more of the Jones Defendants at any time in 2017 and/or 2018.  Except as otherwise alleged, this class consists of the subclasses that are described and identified in ¶¶86(a)-(f) of this Complaint and, unless otherwise specified, for each separate agricultural season that occurred in 2017 and 2018.

105.    Acting through their counsel of record and before resort to litigation, the named plaintiffs and the class of workers that they seek represent under the AWPA that are described in this Claim for Relief made an attempt to resolve the issues in dispute that are presented by this Third Claim for Relief under the AWPA by presenting a copy of this Complaint to the attorney or attorneys representing the Jones Defendants on March 18, 2019 before this Complaint was filed in court and actually engaging in some verbal discussion with that counsel about that attempt.  That discussion was still ongoing as of the date and time this Complaint was filed to preserve the rights of the named plaintiffs and the workers they seek to represent under the statute of  limitations applicable to their FLSA and NCWHA claims.

106.    As a result of the intentional actions or omissions of all defendants that are described or referred to in this Complaint, all named plaintiffs and each person who is a member of the class and subclasses defined in ¶¶86 and 86(a)-(f) above of this complaint have suffered damages, and are entitled to payment of a separate award of statutory damages in the full amount authorized by 29

43

U.S.C. § 1854(c) pursuant to 29 U.S.C. § 1854(c)(1)-(2) for each of the 2017 and 2018 agricultural seasons.

### XIII.  FOURTH CLAIM FOR RELIEF (RIGHT TO WORK AS UNION MEMBER)

107.  Paragraphs 6 through 68 above are realleged and incorporated herein by reference by the two (2) named Plaintiffs against the Jones Defendants, jointly and severally, under the statutory cause of action set forth in N.C.Gen.Stat. § 95-83.

108.  Section 95-78 of the North Carolina General Statutes specifically declares that it is ". . . the public policy of North Carolina that the right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization or association."

109.  As written, and when read in combination, N.C.Gen.Stat. §§ 95-81 and 95-83 prohibit the Jones Defendants' termination of the Plaintiffs' H-2A employment relationship with the Jones Defendants for agricultural seasons after 2018 when the two (2) named Plaintiffs' exercise of their rights protected by N.C.Gen.Stat. §§ 95-78 and/or 95-81 was the Defendants' motivating or moving cause of that termination.

110.  The motivation or moving cause of the Jones Defendants' termination of the Plaintiffs' H-2A employment relationship with the Jones Defendants for agricultural seasons after 2018 that is described in ¶¶31A through 31C above and any agricultural seasons after 2019 for which the Jones Defendants actually make an offer of H-2A employment through the U.S. Department of Labor and U.S. Department of Homeland Security procedures codified in 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and 1188(a)(1) was both to discourage the Plaintiffs' membership and H-2A employee membership in a labor organization or labor union, specifically FLOC, and the Plaintiffs' exercise of the rights provided by N.C.Gen.Stat. §§ 97-78 and 97-81 of North Carolina's

Right to Work statute.

111.    As alleged in ¶¶6-68 and 107-110 above, the Plaintiffs' actions that are described in ¶¶42-43 and 58-63 above of this Complaint constituted their exercise of rights protected by N.C.Gen.Stat. §§ 95-78 and 95-81 during the existence of the Plaintiff's H-2A employment relationship with the Defendants in 2018.

112.    The Jones Defendants' termination of the Plaintiffs' H-2A employment relationship with the Jones Defendants after 2018 was in violation of the provisions of N.C.Gen.Stat. §§ 95-78 and 95-81.

113.    The actions of the Jones Defendants that are complained of in this claim were taken with willful and conscious intent to discourage and impede the efforts of the two named plaintiffs to exercise their rights to membership in a labor organization or labor union under North Carolina's right to work statutes, N.C.Gen.Stat. §§ 95-78 and 95-81, when each of the Jones Defendants knew or should have known that their actions were likely to result in injury or damages to both of the named plaintiffs.

114.    The Plaintiff eke out a living in subsistence farming or part-time construction work in rural Mexico . The Defendants' willful, retaliatory, and wrongful termination of the Plaintiffs' H-2A employment relationship with the Defendants was and is likely to have and did cause severe emotional distress and emotional anguish to the named plaintiffs, and serious economic and emotional consequences and harm to the named Plaintiffs and their families.

115.    The Defendants are and were fully aware of the probable and substantial economic and emotional consequences of their willful conduct on the Plaintiffs and their families.

116.    The Defendants are fully able to pay punitive damages, as evidenced by their revenues or net worth.

45

117. As a result of the intentional, deliberate, and willful actions of the Defendants that are described or referred to in ¶¶6-68 and 107-116, inclusive, above of this Complaint, the two (2) named Plaintiffs have suffered damages, and they are entitled to compensation for lost wages, emotional distress and mental anguish that they each suffered as a direct and proximate result of the Defendants' wrongful and retaliatory termination of the Plaintiffs' H-2A employment relationship with the Defendants in violation of the rights protected by N.C.Gen.Stat. § 95-78 and 95-81, and are due compensation for those damages for lost wages, emotional distress, and mental anguish in an amount to be determined by a jury, any additional loss of wages that may occur after 2019 and before this action comes to judgment as a proximate and direct result of that same wrongful and retaliatory termination, and punitive damages in an amount to be determined by a jury.

## XIV. __FIFTH CLAIM FOR RELIEF (Breach of Job Order Contract)__

118. Paragraphs 4 through 68, inclusive, above are realleged and incorporated herein by reference by the two (2) named Plaintiffs against the Defendants under the common law of contracts pursuant to the H-2A 2018 Job Order employment contract between the two named Plaintiffs and the Jones Defendants that is copied and attached to this Complaint marked as Plaintiffs' Exhibit B, 20 C.F.R. § 655.122(q), and the provisions of that contract that mirror the regulatory provisions of 29 C.F.R. §§ 655.135(e) and 655.135(h)(5).

119. The Jones Defendants offered and provided and the Plaintiffs accepted and competently performed H-2A employment for the 2018 agricultural season pursuant to the terms of the Job Order contract that is copied and marked as Plaintiffs' Exhibit A attached to this Complaint.

120. Under the terms of that Job Order contract, the rights and protections that are the subject of the allegations in ¶¶8-68, inclusive, above of this Complaint were and are "Federal,

46

State and local laws and regulations, including health and safety laws" that were and are applicable to the Plaintiffs' H-2A employment by the Defendants in 2018 and any continuation of that same H-2A employment after 2018 within the meaning of 20 C.F.R. §§ 655.135(e) and 655.135(h)(5).

121.    Through their actions that are described in ¶¶31A, 31B, 31C, 58-63, 67A-67B, and 107-112, inclusive, above of this Complaint, the Jones Defendants breached the provisions of their 2018 Job Order contract with the Plaintiffs  which prohibited and prohibit them from unfair treatment in the form of intimidation, threatening, coercing, blacklisting, and discriminating against the Plaintiffs because of the Plaintiffs' actions that are described in ¶¶8-68 above of this Complaint which involved the exercise of rights and actions protected by the statutes and regulations cited in ¶¶12-68, inclusive, above of this Complaint.

122.    As a direct and proximate result of this breach, the Plaintiffs have suffered damages, and they are entitled to compensation for lost wages that they each suffered as a direct and proximate result of the Jones Defendants' wrongful and retaliatory intimidation, threatening, coercion, blacklisting, discrimination, and termination of the Plaintiffs' H-2A employment relationship with the Jones Defendants in violation of the rights protected by the statutes and regulations cited in ¶¶12-68 above of this Complaint, and are due compensation for those damages for lost wages in an amount to be determined by a jury for lost wages in 2019, any additional loss of wages that may occur after 2019 and before this action comes to judgment as a proximate and direct result of that same wrongful and retaliatory termination in an amount to be determined by the jury.

## XV.    CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF

47

123.    Paragraphs 6 through 122 above are realleged and incorporated herein by reference by two named plaintiffs against the Jones Defendants.

124.    The two named plaintiffs, the workers that they seek to represent, and the Jones Defendants are in a dispute as to their respective rights, privileges, obligations, and liabilities under the North Carolina Retaliatory  Employment Discrimination Act ("REDA"), N.C.Gen.Stat. §§ 95-81 and 95-83, the AWPA, the FLSA, the NCWHA, and the common law of North Carolina relating to breach of contract, and require declaratory relief as to whether:

(a)    the motivating  or moving cause of the Jones Defendants' termination of the Plaintiffs' H-2A employment by the Defendants after 2018 was each Plaintiff's exercise of the rights protected under N.C.Gen.Stat. §§ 95-78 and 95-81;

(b)    the Jones Defendants' retaliatory and discriminatory actions as alleged in this Complaint were in violation of N.C.Gen.Stat. §§ 95-241(a)(1)b., 95-241(a)(2), and 95-241(a)(3) of the REDA;

(c)    the Jones Defendants' violations of the REDA were willful within the meaning of N.C.Gen.Stat. § 95-243(c);

(d)    the Jones Defendants' intimidating, threatening, coercive, blacklisting, retaliatory, and discriminatory actions as alleged in this Complaint were and are in breach of the contract that is copied in Plaintiffs' Exhibit C and attached to this Complaint.

125.    The Jones Defendants' discriminatory, retaliatory, and wrongful termination of the Plaintiffs' H-2A employment by the Defendants after 2018 is ongoing and causing each of the Plaintiffs irreparable harm.  In and around the residence of each plaintiff in Mexico, there are no jobs available to him that will allow him to earn on a weekly basis even ten to twenty percent of what each of them was earning in their employment by the Jones Defendants in 2018, and

would be earning now had the Jones Defendants not terminated the named Plaintiffs' H-2A employment with them after 2018.

126.    As a direct and proximate result of the Jones Defendants' retaliatory and discriminatory termination of the Plaintiffs' H-2A employment with the Jones Defendants after 2018, since March 1, 2018, Plaintiffs, their spouses, or their children will endure extreme hardship and have endured in the form of the one or both of the Plaintiffs' lack of funds necessary to pay for the education of one or more of the Plaintiffs' children, and the Plaintiffs' lack of funds to pay for reasonably necessary medical care for one or more of one or more of the Plaintiffs' children and/or one or more of their spouses.

127.    Therefore, Plaintiffs require equitable relief from this Court to require the Jones Defendants to return them to the H-2A temporary agricultural worker position with Jones Farms that they would have been returned to for the agricultural cultivation, growing and harvest season in 2019, 2020, or in the first agricultural cultivation, growing and harvest season  after 2020 after this action comes to judgment were it not for the continuing discriminatory and retaliatory refusal of the Jones Defendants to renew or rehire termination of the Plaintiffs pursuant to a new' H-2A job order contract of employment by the Jones Defendants as alleged in this Complaint.

WHEREFORE plaintiffs respectfully request that the Court:

(a)    Grant a jury trial on all issues so triable;

(b)    Declare that defendant Jones Sweet Potato Equipment, Inc. ("JSPE"), defendant Jimmy D. Jones, Jr., and defendant Barbara D. Jones have willfully violated the rights of each of the Plaintiffs under North Carolina Retaliation in Employment and Discrimination Act ("REDA"), N.C.Gen.Stat. §§ 95-241(a)(1)b., 95-241(a)(3), and 95-243(c), violated the provisions of N.C.Gen.Stat. §§ 95-81 and 95-83, violated the provisions of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA)", 29 U.S.C. §§ 1801 et seq., the North Carolina Wage and Hour Act ("NCWHA"), N.C.Gen.Stat. §§ 95-25.1, and the common law of contracts;

(c)      Pursuant to 29 U.S.C. § 216(b), certify named plaintiffs Gonzalez and Godinez as representatives of the FLSA collective action alleged in ¶¶77-84 above with respect to the First Claim for Relief of this Complaint;

(c)      Pursuant to Rule 23(b)(3), Fed.R.Civ.P., certify named Plaintiffs Gonzalez and Godinez as representatives of the NCWHA class alleged in ¶¶66 through 76 above with respect to the Second Claim for Relief of this Complaint;

(d)      Pursuant to Rule 23(b)(3), Fed.R.Civ.P., certify named Plaintiffs Gonzalez and Godinez as representatives of the AWPA class alleged in ¶¶85 through 91 above with respect to the Third Claim for Relief of this Complaint;

(e)      Enter judgment against defendants Jones Sweet Potato Equipment, Inc., Jimmy D. Jones, Jr., and Barbara D. Jones, jointly and severally, and in favor of named Plaintiffs Hector Miguel Gonzalez-Ahumada and Ernesto Alonso Godinez-Abrego, and each member of the FLSA Collective Action defined in ¶¶77 through 84 above for unpaid back wages, liquidated damages where allowed by law, plus pre- and post-judgment interest at the full amount allowed by law under the First Claim for Relief;

(f)      Enter judgment against defendants Jones Sweet Potato Equipment, Inc., Jimmy D. Jones, Jr., and Barbara D. Jones, jointly and severally, and in favor of named Plaintiffs Hector Miguel Gonzalez-Ahumada and Ernesto Alonso Godinez-Abrego, and each member of the NCWHA Class Action defined in ¶¶66 through 76 above for unpaid back wages, liquidated

50

damages where allowed by law, plus pre- and post-judgment interest at the full amount allowed by law under the Second Claim for Relief;

(g)     Enter judgment against defendants Jones Sweet Potato Equipment, Inc., Jimmy D. Jones, Jr., and Barbara D. Jones, jointly and severally, and in favor of named Plaintiffs Hector Miguel Gonzalez-Ahumada and Ernesto Alonso Godinez-Abrego, and each member of the AWPA Class Action defined in ¶¶85 through 91 above for statutory damages to each of the named plaintiffs and each such class member under 29 U.S.C. § 1854(c)(1) equal to $500 for each of the AWPA statutory violations that are described in ¶¶86(a)-(f) above of this Complaint, plus pre- and post-judgment interest at the full amount allowed by law under the Third Claim for Relief;

(h)     Enter judgment against defendants JSPE, Jimmy D. Jones, Jr., and Barbara D. Jones, jointly and severally, and in favor of the two named Plaintiffs as to the Plaintiffs' Fourth Claim for Relief for the statutory violations alleged in ¶¶107-117 above for the Jones Defendants' denial of employment to each Plaintiff or the Jones Defendants' deprival of the continuation of each Plaintiff's employment in violation of the statutory rights provided by N.C.Gen.Stat. §§ 95-78, 95-81, and 95-83 for compensatory damages for lost back wages starting on March 17, 2019 and continuing through November 22, 2019 for the accurate number of hours worked by each of the two named plaintiffs in 2018 at $12.25/hour, and compensation for emotional distress and mental anguish in an amount to be determined by the jury that each named plaintiff has suffered as a direct and proximate result of the Defendants' retaliatory and discriminatory refusal to re-hire each of the Plaintiffs, renew the H-2A job order employment contract of each of the Plaintiffs, and the termination and denial of the Plaintiffs' H-2A employment by the Jones Defendants after 2018 to date and for any such employment in or after 2019 that the Defendants have available until judgment is entered in this action in an amount to be determined by the jury, plus punitive damages

51

in an amount to be determined by the jury pursuant to N.C.Gen.Stat. § 1D-15 for the damages that each of the plaintiffs has suffered and seeks under N.C.Gen.Stat. § 95-83 in this Prayer for Relief as a direct and proximate result of the Defendants' conscious and intentional disregard of and indifference to the rights of each of the named plaintiffs under N.C.Gen.Stat. §§ 95-78, and 95-81, and 95-83 plus pre- and post-judgment interest at the full amount allowed by law under the Fourth Claim for Relief;

(i)     Enter judgment on the Plaintiffs' Fifth Claim for Relief for the contract violations alleged in ¶¶118-122 above of this Complaint against defendants JSPE and Jimmy D. Jones, Jr., jointly and severally, and in favor of each named plaintiff for compensatory damages for the same lost back wages in the same amount sought in ¶(h) of the Prayer for Relief that each named plaintiff has suffered as a direct and proximate result of the Defendants' retaliatory and discriminatory refusal to re-hire each of the Plaintiffs, renew the H-2A job order employment contract of each of the Plaintiffs,  termination and denial of the Plaintiffs' H-2A employment by the Defendants after 2017 to date and for any such H-2A employment in or after 2019 that the Defendants have available until judgment is entered in this action in an amount to be determined by the jury, plus pre- and post-judgment interest at the full amount allowed by law under the Plaintiffs' Fifth Claim for Relief;

(j)     Enter judgment for attorney's fees and costs against defendants Jones Sweet Potato Equipment, Inc., Jimmy D. Jones, Jr., and Barbara D. Jones, jointly and severally, and in favor of named Plaintiffs Hector Miguel Gonzalez-Ahumada and Ernesto Alonso Godinez-Abrego, and each member of the FLSA collective action defined in ¶¶77 through 84 above and each member of the NCWHA class defined in ¶¶66 through 76 above pursuant to 29 U.S.C. § 216(b) and N.C.Gen.Stat. § 95-25.22(d);

(k)     Award such other relief as may be just and proper in this action.

Respectfully submitted, this the _____ March, 2019.

LAW OFFICE OF ROBERT J. WILLIS, P.A.

BY:   /s/Robert J. Willis
       Robert J. Willis, Esq.
      Attorney at Law
      NC Bar #10730
      (mailing address)
      P.O. Box 1828
      Pittsboro, NC  27312
      (919) 821-9031 telephone
      (919) 821-1764 facsimile
      Counsel for Plaintiffs
      rwillis@rjwillis-law.com